FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JUL 2 9 2005
3:40pm
Stephan Harris, Clerk
Cheyenne

Reed Zars (Wyo. Bar No. 6-3224)
Attorney at Law
910 Kearney Street
Laramie, Wyoming 82070
307-745-7979
307-745-7999 (FAX)

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | | |
|---|---|---|
| BIODIVERSITY CONSERVATION ALLIANCE and SIERRA CLUB, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.  04CV 361-B |
| MOUNTAIN CEMENT COMPANY, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' PROPOSED FINDINGS OF FACT CONCLUSIONS OF LAW, AND PROPOSED ORDER REGARDING THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT TO ESTABLISH DEFENDANT'S LIABILITY FOR PARTICULATE MATTER VIOLATIONS AT KILN #2

Plaintiffs Biodiversity Conservation Alliance and Sierra Club ("plaintiffs")

respectfully submit their proposed findings of fact and conclusions of law regarding their

motion for partial summary judgment to establish Mountain Cement's liability for

particulate matter violations at Kiln #2.

-1-

A.    Findings of Fact.

1.      Mountain Cement Company, a wholly-owned subsidiary of the Texas company Eagle Materials, Inc., operates a portland cement plant located approximately three miles south of Laramie, Wyoming ("Laramie Plant"). The Laramie Plant manufactures portland cement using two coal-fired kilns and associated equipment. Answer, ¶¶ 12-14.

2.      On June 2, 1998, the DEQ issued Operating Permit No. 30-098 to Mountain Cement. Answer, ¶ 30; **Exhibit F**. Operating Permits in Wyoming are issued for a period of five years. 42 U.S.C. § 7661a(b)(5)(B). On March 15, 2004, DEQ issued a second operating permit to Mountain Cement, Operating Permit No. 31-098. Answer, ¶ 30; **Exhibit G**.

3.      Pursuant to condition (F5)(a) in Mountain Cement's Permit No. 30-098, and condition (F5)(a) in Mountain Cement's Permit No. 31-098, particulate matter emissions from Kiln #2 may not exceed 29.30 pounds per hour. **Exhibit F**, p. 8, and **Exhibit G, p. 8.**

4.      The 29.30 pound per hour particulate matter limit applicable to Kiln #2 in Mountain Cement's operating permits is an "emission standard or limitation" within the meaning of 42 U.S.C. § 7604(a)(1) and (f).

5.      The 29.30 pound per hour particulate matter limit applicable to Kiln #2 in Mountain Cement's operating permits is federally enforceable.

6.      According to Mountain Cement Permit No. 31-098, when the pollution from Kiln #2 is greater than 20 percent opacity over the period of one hour, particulate matter emissions from Kiln #2 have exceeded 29.3 pounds per hour. **Exhibit G**, p. 73.

B.      Conclusions of Law

1.      Mountain Cement Permit Nos. 30-098 and 31-098, conditions (F5)(a), prohibit the emission of particulate matter from Kiln #2 in excess of 29.3 pounds per hour. **Exhibits F** and **G**, p. 8.

2.      Pursuant to the Clean Air Act at 42 U.S.C. § 7661a(a), "[a]fter the effective date of any permit program approved or promulgated under this subchapter, it shall be unlawful for any person to violate any requirement of a permit issued under this subchapter." Wyoming's operating permit program was approved by EPA on February 22, 1999. 64 Fed. Reg. 8523 (Feb. 22, 1999); Answer, ¶ 25.

3.      According to Mountain Cement's Permit 31-098, "[a]ll terms and conditions of the permit, except those designated as not federally enforceable, are enforceable by EPA and citizens under the Act." **Exhibit G**, p. 2. Because the 29.3 pounds per hour particulate matter limit in Mountain Cement's permits is an "emission standard or limitation" as defined in the Clean Air Act at 42 U.S.C §7604(f)(1), (3), and (4), it can be enforced by plaintiffs in this action pursuant to the Clean Air Act's citizen suit provision at 42 U.S.C. § 7604(a)(1).

4.      Mountain Cement is required by condition (F15) in Permit No. 30-098,

-3-

and conditions (F11)(a) and (F12) in Permit No. 31-098 to monitor the opacity of emissions discharged from Kiln #2 at the Laramie Plant. **Exhibit F**, p. 13; Exhibit G, pp. 9-10. The continuous opacity monitor that measures emissions from Kiln #2 is located and certified consistent with the requirements found at 40 C.F.R. § 60, App. B, Performance Specification 1. Answer, ¶ 48.

5.      Pursuant to Mountain Cement Permit No. 30-098, condition (F31), and Permit No. 31-098, conditions (F25) and (P63-LLL8), Mountain Cement is required to submit on a quarterly basis a written report to DEQ that discloses each six-minute period of time in which emissions of pollutants from Kiln #2 exceeded the applicable opacity standard ("excess emission reports"). **Exhibit F**, p.16; **Exhibit G**, p. 14.

6.      Mountain Cement's permits also require the company to certify that the monitor data in its quarterly reports is "true, accurate and complete." **Exhibit F**, condition (G4), p. 21; **Exhibit G**, condition (G4), p. 28.

7.      According to Mountain Cement's "Compliance Assurance Monitoring" (CAM) plan, Mountain Cement is in compliance with the 29.3 pounds per hour particulate matter emission limit applicable to Kiln #2 as long as emissions from Kiln #2 do not exceed 20 percent opacity over a period of one hour or more. **Exhibit G**, p. 73.

8.      According to Mountain Cement's Permit 31-098, condition (C1)(b)(ix), "For particulate emissions from the #1 and #2 kiln stacks, the permittee shall assess compliance with condition F5(a) [the 29.3 pounds per hour limit] by conducting the

-4-

testing required by condition F8 [stack tests] and the CAM required by condition F11 [opacity-to-particulate matter correlation]." **Exhibit G**, p. 25. Mountain Cement's CAM opacity-to-particulate matter correlation described above may be used to determine compliance.

9.     Mountain Cement's Permit 31-098, condition (C1)(f), also states, "Determinations of compliance or violations of this permit are not restricted to the monitoring requirements listed in paragraph (b) of this condition; other credible evidence may be used."

10.     As shown by **Exhibits I and P**, Mountain Cement has violated the 29.3 pounds per hour limit over 800 hours at Kiln #2 beginning with the fourth quarter of 1999 through the first quarter of 2005. Mountain Cement's violations of the 29.3 pounds per hour limit are set forth in **Exhibit P**.

15.     Plaintiffs' action is not precluded by the Clean Air Act at 42 U.S.C. Section 7604(b)(1)(B) as a result of a 2005 Consent Decree between DEQ and Mountain Cement. This is because the Consent Decree does not address in any way Mountain Cement's liability for particulate matter violations.

C.     Order

It is therefore Ordered and Adjudged that plaintiffs' motion for partial summary judgment to establish Mountain Cement's liability for particulate matter violations at Kiln #2 is hereby granted.

_____
UNITED STATES DISTRICT JUDGE

Respectfully submitted,

DATED this $27\underline{th}$ day of July, 2005.

BIODIVERSITY CONSERVATION ALLIANCE
and SIERRA CLUB, Plaintiffs

$\text{RESO ZARS}$
_____
Reed Zars
Attorney at Law
910 Kearney Street
Laramie, WY 82070
307-745-7979
307-745-7999 (fax)

-6-

Section 7604(b)(1)(B) as a result of a 2005 Consent Decree between DEQ and Mountain Cement. This is because the Consent Decree does not address in any way Mountain Cement's liability for clinker cooler opacity violations.

C.    Order

It is therefore Ordered and Adjudged that plaintiffs' motion for partial summary judgment to establish Mountain Cement's liability for opacity violations at the Laramie Plant clinker coolers is hereby granted.

_____
UNITED STATES DISTRICT JUDGE

Respectfully submitted,

DATED this 29TH day of July, 2005.

BIODIVERSITY CONSERVATION ALLIANCE and SIERRA CLUB, Plaintiffs

Reed Zars
Attorney at Law
910 Kearney Street
Laramie, WY 82070
307-745-7979
307-745-7999 (fax)

-7-