FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

OCT 1 2 2005
9:55 AM
Stephan Harris, Clerk
Cheyenne

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| BIODIVERSITY CONSERVATION ALLIANCE and SIERRA CLUB, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 04-CV-361-B |
| MOUNTAIN CEMENT COMPANY, | ) ) | |
| Defendant. | ) | |

---

### ORDER ON VARIOUS MOTIONS

---

This matter is before the Court on (1) Plaintiffs' Motion for Partial Summary Judgment to Establish Plaintiffs' Standing; (2) Defendant's Motion for Summary Judgment Concerning Notice; (3) Plaintiffs' Motion for Partial Summary Judgment to Establish Defendant's Liability for Kiln #2 Opacity Violations; (4) Plaintiffs' Motion for Partial Summary Judgment to Establish Defendant's Liability for Kiln #2 Particulate Matter Violations; (5) Plaintiffs' Motion for Partial Summary Judgment to Establish Defendant's Liability for Clinker Cooler Opacity Violations; (6) Defendant's Motion for Summary Judgment Concerning Opacity and Particulate Matter Emissions Standards; (7) Plaintiffs' Motion for Order Withdrawing August 1, 2005 Order; and (8) Defendant's

Objections to Exhibits Supporting Plaintiffs' Motions for Partial
Summary Judgment.  After considering the motions, having reviewed
the materials on file, having heard oral argument, and being fully
advised in the premises, the Court **FINDS** and **ORDERS** as follows:

### STATEMENT OF THE PARTIES AND JURISDICTION

Plaintiff Biodiversity Conservation Alliance ("BCA") is a
nonprofit conservation organization based in Laramie, Wyoming.  BCA
is dedicated to the protection of wildlife, fish, plants and the
lands which support wildlife, fish, and plants.  BCA brings this
action on behalf of its members, who reside throughout southeastern
Wyoming.  Plaintiff Sierra Club is a national citizens organization
dedicated to protecting natural resources, including clean air and
water.  Sierra Club brings this suit on behalf of its members, who
reside in Wyoming and other parts of the country.  Defendant
Mountain Cement Company ("Mountain Cement") is a Nevada corporation
authorized to do business in Wyoming and currently operates a
cement manufacturing plant in Laramie, Wyoming.  Mountain Cement is
a wholly-owned subsidiary of Eagle Materials, Inc., a Texas-based
corporation.

Plaintiffs bring this suit pursuant to 28 U.S.C. § 1331
(federal question statute) and 42 U.S.C. § 7604(a) (Clean Air Act

citizen suit provision).  Plaintiffs dispute the jurisdiction of the Court.  Venue is proper under 28 U.S.C. § 1391 and 42 U.S.C. § 7604(c).

**BACKGROUND**

Mountain Cement owns and operates a cement manufacturing plant three miles south of Laramie, Wyoming (hereinafter referred to as the "Laramie Plant" or "the Plant").  Defendants produce the cement, known as portland cement, in two coal-fired kilns and the necessary associated equipment.[1]  Kiln #1 is rated to produce 600 tons of clinker per day.  Kiln #2 has a rated capacity of 1,500 tons of clinker per day.

As a result of the cement production, the Defendants release

---

[1]

The process of manufacturing portland cement was adequately described by the United States Court of Appeals for the District of Columbia as follows:

> [P]ortland cement is a fine powder that serves as the key ingredient in the concrete used in most construction. The cement manufacturing process begins by grinding together materials such as limestone, clay, shale, sand, iron ore, and flyash and heating the mixture in a kiln. Known as "clinker," the heated mixture is then cooled in a "clinker cooler" and ground to a fine powder in a mill.

National Lime Ass'n v. E.P.A., 233 F.3d 625, 629 (D.C. Cir. 2000) (internal quotations omitted); see also Commissioner of Internal Revenue v. Portland Cement Co. of Utah, 450 U.S. 156, 159 n.1 (1981).

emissions from three stacks at the Laramie Plant: the stack attached to Kiln #1, the stack attached to Kiln #2, and the stack attached to the clinker cooler. Such emissions are regulated by the State of Wyoming under the Clean Air Act ("CAA") and in accordance with the CAA operating permit issued to the Defendant by the State. From June 1999, to March 14, 2004, Defendant manufactured cement subject to the conditions of Operating Permit No. 30-098. From March 15, 2005, to present, Defendants were subject to the conditions of Operating Permit No. 31-098.[2]

Both operating permits limit Defendant's emissions from the kiln stacks to twenty percent (20%) opacity and the clinker cooler stack emissions to ten percent (10%) opacity.[3] These opacity standards are based upon a six minute average and are monitored on a continual basis by a continuous opacity monitor ("COM"). The COM system consists of several transmissometers that are located at the top of each stack and measure the amount of light that can pass

---

[2]

Operating permits are typically issued for a period of five (5) years. 42 U.S.C. § 7661a(b)(5)(B).

[3]

"Opacity means the degree to which emissions reduce the transmission of light and obscure the view of an object in the background." 40 C.F.R. § 60.2 (internal quotations omitted).

through the exhaust before it is emitted into the atmosphere.  The
emissions data collected by the COM is stored and retained in a
computer at the Laramie Plant.

The operating permits also limit the amount of particulate
matter that may be emitted by Kiln #2.  According to the operating
permits, Defendants may emit 29.30 pounds of particulate matter per
hour from Kiln Stack #2.  This standard can also be monitored, to
some degree, by the COM system.

Plaintiffs bring this citizen enforcement suit, as allowed by
the CAA, alleging that Defendant has violated the operating permits
by (1) exceeding the opacity limit on Kiln #2; (2) exceeding the
opacity limit on the clinker cooler stack, and (3) exceeding the
particulate limit on Kiln #2.  As support for this claim,
Plaintiffs cite the Court to the Defendant's emission records as
compiled by the COM system at the Laramie Plant.  Plaintiffs
contend that the records indicate the Kiln #2 has exceeded its
opacity limit every calendar quarter for the last six years.
Allegedly, the opacity limits for Kiln #2 have been exceeded on
15,480 occasions during this time.  Similarly, Plaintiffs allege
that Kiln #2 has exceeded its particulate matter limit during 800
hours since October 1, 1999, and that the clinker cooler stack has

exceeded its ten percent opacity limit 3,484 times during the same time period.

## DISCUSSION

Both Plaintiffs and Defendant have filed motions for summary judgment regarding several different issues. Plaintiffs have also filed a motion to strike an order granting Defendant leave to amend. In addition, Defendant has filed objections to several of Plaintiffs' exhibits attached to their motions for partial summary judgment. Each of these motions will be addressed below.

## I.    Motions for Partial Summary Judgment

### A.    Standard of Review

Summary judgment is proper when there is no genuine issue of material fact to be resolved at trial. Fed. R. Civ. P. 56(c); Nebraska v. Wyoming, 507 U.S. 584, 590 (1993). Thus, a district court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Nelson v. Geringer, 295 F.3d 1082, 1086 (10th Cir. 2002). "An issue of material fact is genuine where a reasonable jury could return a verdict for the

6

party opposing summary judgment." <u>Seymore v. Shawver & Sons, Inc.</u>,
111 F.3d 794, 797 (10th Cir. 1997) (citations omitted).

In applying these standards, the district court will view the
evidence in the light most favorable to the party opposing summary
judgment. <u>Jenkins v. Wood</u>, 81 F.3d 988, 990 (10th Cir. 1996). The
movant bears the initial burden of demonstrating the absence of
evidence to support the non-moving party's claims. <u>Celotex Corp.
v. Catrett</u>, 477 U.S. 317, 325 (1986). If the moving party carries
this initial burden, the non-moving party must then establish a
genuine issue of material fact. <u>Matsushita Elec. Indus. Co., Ltd.
v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>Bacchus Indus.,
Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991). To
carry this burden, the non-moving party must go beyond the
pleadings and designate specific facts to show there is a genuine
issue for trial. <u>Ford v. West</u>, 222 F.3d 767, 774 (10th Cir. 2000).
The mere existence of a scintilla of evidence in support of the
non-moving party's position is insufficient to create a "genuine"
issue of disputed fact. <u>Lawmaster v. Ward</u>, 125 F.3d 1341, 1347
(10th Cir. 1997).

**B. Plaintiffs' Motion for Partial Summary Judgment to Establish Plaintiffs' Standing**

Plaintiffs move the Court to make a definitive finding that

7

they, as representatives of their individual members, have standing to pursue this suit. In support of this motion, Plaintiffs argue that their members have been harmed by Defendant and that this suit could redress their injuries. Conversely, Defendant contends that Plaintiffs' members cannot show that they have been harmed or that any harm is traceable to Defendant.

According to the United States Supreme Court, an association can bring claims on behalf of their members "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 181 (2000). Assuming that the interests at stake in this suit are germane to the Plaintiffs' purposes and that neither the claim asserted nor the relief request requires the participation of individual members in the lawsuit, the question becomes whether the individual members of BCA and Sierra Club have standing to sue in their own right.

It is well-settled that an individual plaintiff, in order to have Article III standing, must prove, at a minimum, three specific

elements.

> First, the plaintiff must have suffered an "injury in
> fact" - an invasion of a legally protected interest which
> is (a) concrete and particularized and (b) actual or
> imminent, not conjectural or hypothetical. Second, there
> must be a causal connection between the injury and the
> conduct complained of - the injury has to be fairly
> traceable to the challenged action of the defendant, and
> not the result of the independent action of some third
> party not before the court. Third, it must be likely, as
> opposed to merely speculative, that the injury will be
> redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)

(internal quotations and citations omitted). The plaintiff, as

the party invoking federal jurisdiction, "bears the burden of

establishing these elements." Id. at 561. However, "at the

pleading stage, general factual allegations of injury resulting

from the defendant's conduct may suffice." It is only upon a

defendant's motion for summary judgment that a plaintiff must set

forth specific facts that will be taken as true and thereby create

a genuine issue of material fact. Id.

In this case, though, the Plaintiffs are the parties moving

for summary judgment. Thus, they must show that there are no

genuine issues of material fact left to be resolved at trial. Fed.

R. Civ. P. 56(c). Plaintiffs must demonstrate that the facts,

when viewed in Defendant's favor, require judgment in their favor.

9

Jenkins, 81 F.3d at 990.   Plaintiffs, however, cannot meet the burden placed upon a party moving for summary judgment.  The Court, after reviewing the pleadings, affidavits, and depositions, finds that there are genuine issues of material fact remaining to be resolved at trial in regards to the standing elements set forth in Lujan.

For instance, if we view the facts in Defendant's favor, it is apparent that Plaintiffs cannot satisfy the injury-in-fact prong as their members have not conclusively shown that they have been harmed by the Plant's emissions.  Plaintiffs' members simply claim an aesthetic harm; the members admit that they have suffered no illnesses as a result of the Plant's emissions.  See Barlow Depo. at 25-26; Martinez del Rio Depo. at 16; Strayer Depo. at 32; Wilbert Depo. at 29.  However, the claim of aesthetic harm could be viewed as weak or unreasonable as several of the members admit that other residents in Laramie do not perceive the Plant to cause as much harm as they do.  See Strayer Depo. at 41-42; Wilbert Depo. at 29, 31.   The Plaintiffs' members are also inconsistent in describing the alleged aesthetic harms caused by the Plant.  See Barlow Depo. at 17; Martinez del Rio Depo. at 10, 12-13; Strayer Depo. at 15, 28-29; Wilbert Depo. at 14.

10

The Plaintiffs have also failed to show that their members' aesthetic injuries are fairly traceable to the Defendant.  In order for their injuries to be fairly traceable to the Defendant, Plaintiffs must demonstrate that Defendant has violated the applicable emission standards.  See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 161-62 (4th Cir. 2000); Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc., 73 F.3d 546, 557 (5th Cir. 1996); Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals Inc., 913 F.2d 64, 72-73 (3rd Cir. 1990).  As will be discussed below, Plaintiffs have not done so at this stage in the proceedings.

Therefore, for the reasons just stated, Plaintiffs' Motion for Partial Summary Judgment to Establish Plaintiffs' Standing is **DENIED**.

### C.    Defendant's Motion for Summary Judgment Concerning Notice

Defendant Mountain Cement argues that Plaintiffs' case should be dismissed because Plaintiffs did not adhere to the notice requirements of the CAA.  According to the CAA, all citizen suit plaintiffs must give sixty (60) days notice before filing a complaint.  42 U.S.C. § 7604(b)(1)(A).  This notice must be given to the alleged polluter, the federal government, and the applicable

11

state government.   Id.   The notice must include "sufficient
information to permit the recipient to identify the . . . date or
dates" of the alleged CAA violation.   40 C.F.R. § 54.3(b).   A
plaintiff's failure to meet the notice requirements set forth above
can result in dismissal of his or her suit.   See Save Our Health
Org. v. Recomp of Minn., Inc., 37 F.3d 1334, 1337-38 (8th Cir.
1994).

     Applying the notice requirements of the Act to this case, the
Court finds that the Plaintiffs have substantially complied with
the same.   On October 22, 2005, Plaintiffs notified Defendant, the
United States Environmental Protection Agency, and the Wyoming
Department of Environmental Quality of their intent to bring a
citizen enforcement action.   Defendant's Motion for Summ. J.
Concerning Notice at Exhibit A.   The Plaintiffs subsequently
brought suit on December 23, 2005.   Thus, Plaintiffs notified the
necessary parties and waited the necessary time period before
filing this suit.

     The only remaining question regarding the validity of the
notice is whether Plaintiffs included sufficient information in the
notice letter to permit the recipient to identify the dates of the
alleged CAA violation.   The portion of the letter concerning the

12

alleged violation dates reads as follows:

> Mountain Cement regularly violated at Kiln #2 the 20 percent opacity limit in condition (F3)(a) of Permit No. 30-098 (1998), and has often violated and continues to violate that same limit in condition (F3)(b) in Permit No. 31-098 (2004).  The evidence of each 20 percent opacity limit violation at Mountain Cement Kiln #2 for each day is set forth in Mountain Cement's Continuous Emissions Monitoring Reports that have been filed with DEQ on a quarterly basis.  Each 6-minute average continuous opacity monitor reading in excess of 20 percent as described in each of Mountain Cement's continuous stack opacity monitors between October 1, 1999 to the date of this letter, constitutes a violation of the 20 percent limit for which you are liable to pay a civil penalty.  Each opacity reading in excess of this limit after the date of this letter constitutes an additional violation for which you are also liable to pay a civil penalty.

Id.

Defendant claims that the above-quoted language does not meet the requirements of the notice statute as it does not explicitly set forth the exact dates of the alleged violations.  The statute, however, does not require such specificity.  See Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc., 50 F.3d 1239, 1247-48 (3rd Cir. 1995); City of Biddeford v. Maine Energy Recovery Co., LP, 323 F. Supp. 2d 111, 113 (D. Me. 2004); Sierra Club v. Tri-State Generation and Transmission Ass'n, Inc., 173 F.R.D. 275, 283 (D. Colo. 1997).  It does not require the notice to contain the exact dates of the violation.  Hudson Riverkeeper Fund, Inc. v.

13

<u>Putnam Hosp. Center, Inc.</u>, 891 F. Supp. 152, 154 (S.D.N.Y. 1995)
(noting that "the specific dates need not themselves be included in
the letter").  Such a requirement would be "inconsistent with the
balance Congress sought to strike between encouraging citizen
enforcement of environmental regulations and avoiding burdening the
federal courts with a flood of citizen suits."   <u>Friends of
Frederick Seig Grove #94 v. Sonoma County Water Agency</u>, 124 F.
Supp. 2d 1161, 1169 (N.D. Cal. 2000).   Rather, the statute only
requires that the notice include "<u>sufficient information to permit
the recipient to identify the . . . date or dates</u>" of the alleged
CAA violation.  40 C.F.R. § 54.3(b) (emphasis added).   The letter
sent by Plaintiffs clearly meets this requirement.   The letter
informs Defendant that the violations are listed in the Defendant's
own reports and that such violations occurred whenever the
continuous opacity monitor's six minute average read in excess of
twenty percent (20%).   The letter also sets forth a general time
period in which the violations occurred.  Based upon this language,
the Defendant could scan its own reports, locate those times when
the six minute average exceeded twenty percent (20%), and easily
identify the dates of the violations.   <u>See</u> <u>Friends of Frederick
Seig Grove #94</u>, 124 F. Supp. 2d at 1169 (finding that a letter

14

citing the defendant's own documents gave the defendant sufficient notice of the dates of the alleged violations).

Therefore, in accordance with the forgoing, Defendant's Motion for Summary Judgment Concerning Notice is **DENIED**.

### D.    Motions for Summary Judgment Regarding Opacity and Particulate Matter Violations

Both Plaintiffs and Defendant have moved for summary judgment on the alleged opacity and particulate matter violations.   Often, such cross motions for summary judgment indicate that there are no genuine issues of fact left to be resolved at trial.   See Orange Environment, Inc. v. County of Orange, 923 F. Supp. 529, 530 (S.D.N.Y. 1996); Dal-Bac (Pty.), Limited v. Firma Astorwerk Otto Berning & Co., 244 F. Supp. 516, 517 (S.D.N.Y. 1965).   However, this is not always true as "a party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for purposes of his own motion." Grace United Methodist Church v. City of Cheyenne, 235 F. Supp. 2d 1186, 1191 (D. Wyo. 2002) (Brimmer, J.) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2720, at 332 (3d ed. 1998)).   Thus, "[c]ross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."   Buell

Cabinet Co., Inc. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979).
Consequently, the Court must address each parties' claims
independently.  The Court will begin  with Plaintiffs' motions.

### 1.    Plaintiffs' Motions for Partial Summary Judgment

Plaintiffs bring three motions for partial summary judgment
and therein contend that the Court should grant them judgment on
each count contained within their Complaint.  Plaintiffs argue that
Defendant's own monitoring records demonstrate that opacity limits
have been violated at Kiln #2 and the Clinker Cooler thousands of
times since October 1, 1999.  Plaintiffs also claim that Defendant
has violated particulate matter limits at Kiln #2 over 800 hundred
hours between October 1, 1999, and March 31, 2005.

In response to the opacity claims, Defendant contends that
most of the opacity exceedances were caused by start up, shut down,
or malfunction and, therefore, under the law are not considered to
be violations.[4]  See 40 C.F.R. § 60.11(c) ("The opacity standards

---

[4]

    An exceedance is the "amount by which something, especially a
pollutant,  exceeds  a  standard  or  permissible  measurement."
http://dictionary.reference.com/search?q=exceedance.  See also 40
CFR Pt. 50, App. H (noting that the term exceedance is "used to
describe a daily maximum hourly average ozone measurement that is
greater than the level of the standard.").

set forth in this part shall apply at all times except during periods of startup, shutdown, malfunction, and as otherwise provided in the applicable standard."). Defendant maintains that the remaining exceedances were not violations because of the "five percent rule" utilized by the State of Wyoming to determine opacity violations. According to the Defendant, the Wyoming Department of Environmental Quality does not consider exceedances occurring less than five percent (5%) of the operating time in any one quarter and less than three percent (3%) of the operating time in two consecutive quarters to be violations. Defendants maintain that this rule serves as a "safe harbor" provision. In another argument, Mountain Cement argues that the COM data relied upon by Plaintiffs to bring this suit cannot be used to show violations of Permit 30-098. Instead, as Defendant avers, only EPA Reference Method 9 can be used to demonstrate opacity violations of Permit 30-098.

Plaintiffs call all of these defenses into question. First, while they admit the validity of the start up and shut down defense, Plaintiffs argue that the malfunction defense is separate from start up and shut down. They argue that the malfunction defense only prevents an exceedance from being viewed as a

17

violation if the Defendant notifies the State within twenty-four (24) hours of the malfunction.  Plaintiffs claim that Defendant did not do this for every malfunction.  Second, Plaintiffs contend that the five percent rule does not exist.  They claim that the State does not have such a policy in place for detecting violations. Plaintiffs also contend that the five percent rule, if it does exist, violates the CAA.  Third, Plaintiffs argue that the COM data is a reliable testing method and is approved by both CAA permits issued to Defendant, not just Permit 31-098.

Obviously, there is an issue of fact in regards to the opacity claims.  The trier of fact will have to determine which exceedances qualify as start up or shut down and which ones were the result of malfunctions.  In addition, the jury will be called upon to determine if and when the Defendant reported malfunctions to the State.[5]  The jury will also be required to determine if the State utilizes a five percent rule.  This determination will likely

---

[5]

Of course, the Court will need to determine whether the Defendant is required to report malfunctions in order to claim the malfunction defense.  This is a matter of contract interpretation and, thus, is a matter of law to be resolved by the Court.  See Helm v. Board of County Com'rs, Teton County, Wyo., 989 P.2d 1273, 1275 (Wyo. 1999).  However, the Court would like to hear the trial testimony of the government officials before it makes its ruling on this issue.  Such testimony may shed some light on the somewhat ambiguous permit.

require the examination of a state official responsible for administering the CAA in Wyoming.[6]

Defendant, as with the opacity claims, avers that most of the particulate exceedances at Kiln #2 occurred during start up, shut down, or malfunction. Thus, Defendant claims that such exceedances do not amount to violations. See 40 C.F.R. § 60.8(c) ("[E]missions in excess of the level of the applicable emission limit during periods of startup, shutdown, and malfunction [shall not] be considered a violation of the applicable emission limit . . . ."). Mountain Cement also contends that the COM data used by Plaintiffs to show violations is not the proper method to determine particulate matter violations. Rather, according to Defendant, EPA Method 5, a test which has shown no violations during the time period in question, is the proper test for detecting violations.

Based upon the disagreements on the start up, shut down, or malfunction exception, and the proper measurement of particulate matter, the Court easily finds that an issue of fact remains in regard to Plaintiffs' particulate matter claim. It is quite clear

---

[6]

As with the malfunction defense, it will be up to the Court to determine if the five percent rule is valid in light of the CAA. However, the jury will first need to determine whether such a rule exists.

that a jury will be required to determine if any violations occurred, no matter what method is ultimately used to determine such violations.

Defendant also contends that any opacity or particulate matter violations that may have occurred at the Plant between October 1, 1999, and March 31, 2005, have been resolved through the state enforcement suit commenced by the State of Wyoming. Essentially, Defendant argues that the state suit constituted diligent prosecution, which would bar a citizen enforcement suit. See 42 U.S.C. § 7604(b)(1)(B). Plaintiffs, however, argue that the state suit did not constitute diligent prosecution because it did not seek enforcement of all exceedances that have occurred at the Plant since October 1, 1999.

Although the diligent prosecution defense may touch on questions of law, it also involves several issues of fact. For instance, as stated above, a jury would be required to determine if there were any violations which were not considered by the State in the previous action. The jury would also need to determine whether the State uses a five percent rule as that would delineate the scope of the state enforcement action and establish which exceedances were actually covered by the state suit.

20

Therefore, in accordance with the foregoing, Plaintiffs'
Motion for Partial Summary Judgment to Establish Defendant's
Liability for Kiln #2 Opacity Violations, Plaintiffs' Motion for
Partial Summary Judgment to Establish Defendant's Liability for
Kiln #2 Particulate Matter Violations, and Plaintiffs' Motion for
Partial Summary Judgment to Establish Defendant's Liability for
Clinker Cooler Opacity Violations are all **DENIED**.

### 2.    Defendant's Motion for Summary Judgment

Like Plaintiffs, Defendant has filed a motion for summary
judgment regarding Defendant's alleged opacity and particulate
matter emission violations.  In this motion, Defendant makes many
of the same arguments that it made in response to Plaintiffs'
motions.  Defendant contends that: (1) many of the exceedances
occurred during start up, shut down, or malfunction; (2) COM data
cannot be used to determine opacity violations; (3) opacity
exceedances occurring less than five percent of the time in any one
quarter are not violations; (4) Defendant has never violated the
particulate matter limits; and (5) the state suit precludes
Plaintiffs' claims in this suit.

Defendant's motion, however, fairs no better than Plaintiffs'
motions.  It is clear that Defendant, like Plaintiffs, cannot show

21

that the opposing party has no facts which support their claims. See <u>Celotex Corp.</u>, 477 U.S. at 325.  Viewing the evidence in a light favorable to Plaintiffs, it is apparent that Defendant may have violated the opacity and particulate matter limits at the Plant.  <u>See</u> <u>Jenkins</u>, 81 F.3d at 990.  For example, Plaintiffs may demonstrate that there were exceedances at the Plant which do not qualify as start up and shut down and there may be malfunctions which were not reported, although it has yet to be determined if that is necessary under the permit.  Plaintiffs may also show, depending on the testimony of the State's officials, that there is no five percent rule.  Thus, Defendant could possibly be liable for those exceedances it thought qualified for exemption under such rule.  These are just a few examples of Plaintiffs' many factual claims which preclude summary judgment in Defendant's favor.

Accordingly, Defendant's Motion for Summary Judgment Concerning Opacity and Particulate Matter Emissions Standards is **DENIED**.

## II. **Plaintiffs' Motion for Order Withdrawing August 1, 2005, Order**

On July 29, 2005, Defendant requested leave to file an Amended Answer.  In support of its motion for leave, Defendant claimed that new defenses, namely collateral estoppel and *res judicata*, had

arisen in this suit due to the completion of a state enforcement action still pending at the time Defendant filed its original answer. On August 1, 2005, finding good cause for the request, the Court granted Defendant's motion. Plaintiffs now move the Court to withdraw the August 1, 2005, Order. Plaintiffs contend that they should have been able to respond to the motion before the Court ruled in favor of Defendant. The Court finds little merit in this argument.

It is well established that a trial court has great discretion in determining whether to grant a party leave to amend. Federal Ins. Co. v. Gates Learjet Corp., 823 F.2d 383, 387 (10th Cir. 1987). It is also axiomatic "that a court should freely grant leave to amend when justice so requires." Yapp v. Excel Corp., 186 F.3d 1222, 1230 (10th Cir. 1999) (citing Fed. R. Civ. P. 15(c)).

In the case *sub judice*, there are several reasons why the Court, as required by interests of justice, granted Defendant leave to amend. First, the amendment did not result in any undue prejudice to the Plaintiffs. Second, Defendant did not request the amendment in an untimely manner. Defendant filed the motion for leave within a reasonable time after the completion of the state court suit. Third, the Court would have granted the motion

23

regardless of Plaintiffs' arguments.  The Court prefers to play with all the cards on the table and denying Defendant's request to amend would vitiate this policy.

Therefore, for the reasons just stated, Plaintiffs' Motion for Order Withdrawing August 1, 2005, Order is **DENIED**.

### III. Defendant's Objections to Exhibits Supporting Plaintiffs' Motions for Partial Summary Judgment

Defendant Mountain Cement objects to many of the exhibits used by Plaintiffs to support their motions for summary judgment. Defendant contests the use of the exhibits on various grounds, including relevancy, authenticity, foundation, and hearsay. However, because the admittance or exclusion of these exhibits would not affect the Court's ruling on the other motions considered within this Order, the Court will decline to rule on the exhibits at this time.  The Court will rule on these exhibits at trial when offered into evidence or upon a properly submitted motion *in limine*.

Therefore, Defendant's Objections to Exhibits Supporting Plaintiffs' Motions for Partial Summary Judgment are **OVERRULED**.

## CONCLUSION

In accordance with the foregoing discussion, and for all the reasons stated therein,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment to Establish Plaintiffs' Standing is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment Concerning Notice is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment to Establish Defendant's Liability for Kiln #2 Opacity Violations is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment to Establish Defendant's Liability for Kiln #2 Particulate Matter Violations is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment to Establish Defendant's Liability for Clinker Cooler Opacity Violations is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment Concerning Opacity and Particulate Matter Emissions Standards is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Order

Withdrawing August 1, 2005, Order is **DENIED**; and

**IT IS FINALLY ORDERED** that Defendant's Objections to Exhibits Supporting Plaintiffs' Motions for Partial Summary Judgment are **OVERRULED**.


Dated this ___11th___ day of October, 2005.

UNITED STATES DISTRICT JUDGE