FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
OCT 1 7 2005
4:50
Stephan Harris, Clerk
Cheyenne

Reed Zars (Wyo. Bar No. 6-3224)
Attorney at Law
910 Kearney Street
Laramie, Wyoming 82070
307-745-7979
307-745-7999 (FAX)

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

BIODIVERSITY CONSERVATION ALLIANCE and SIERRA CLUB,

Plaintiffs,

v.

MOUNTAIN CEMENT COMPANY,

Defendant.

Case No. 04CV 361-B

**PLAINTIFFS' AMENDED TRIAL EXHIBIT AND WITNESS LISTS**

Pursuant to the Court's October 13, 2005 oral Order, plaintiffs respectfully submit the following amended trial exhibit and witness lists.

Exhibit 1: Plaintiffs' October 22, 2004 60-day notice letter.

Exhibit 2: June 5, 1996 DEQ Notice of Violation to Mountain Cement.

Exhibit 3: July 2, 1996 DEQ Compliance Order.

Exhibit 4: Mountain Cement's June 2, 1998 DEQ Operating Permit No. 30-098.

Exhibit 5: Mountain Cement's March 15, 2004 DEQ Operating Permit No. 31-098.

Exhibit 6: January 25, 2002 Sansing Memo.

Exhibit 7: Mountain Cement Quarterly Excess Emission Reports from 4th Quarter 1999 through 2nd Quarter 2005, excerpts.

Exhibit 8: Kiln #2 Opacity Violations Summary.

Exhibit 9: Mountain Cement daily opacity sheets 4th quarter 1999 - 2nd quarter 2001.

Exhibit 10: February 16, 2000 DEQ letter refusing to excuse excess opacity emissions.

Exhibit 11: May 14, 1999 EPA Fact Sheet regarding HAPs from Cement Plants.

Exhibit 12: Clinker Cooler Excess Emission Summary.

Exhibit 13: Kiln #2: Hours of 3-Hour Average Opacity over 25 Percent

Exhibit 14: June 12, 2005 Expert Report of Bill Wilson and the following attachments:

(1) Opacity Summary for Kiln #2
(2) Opacity Summary for Kiln #1
(3) June 21, 1996 letter from Mountain Cement to DEQ regarding replacement of ESP with baghouse.
(4) 1978 design and performance parameters for Kiln #2 ESP (Mikropul)
(5) Mountain Cement's 1987 application to the DEQ for modification of Kiln #2, excerpts.
(6) January 2, 2004 RETEC stack test, excerpts.
(7) TRK 2000 and 2001 reports, cover pages and pp. 3888 – 3890, and pp. 3934 – 3939
(8) TRK 2004 report, cover page and p. 3791.
(9) Permit documents showing use of baghouses to control kiln emissions at Illinois Cement Co. plant in La Salle, Illinois, the Texas Lehigh Cement Co. plant in Buda, Texas, and the Nevada Cement Co. plant in Fernley, Nevada
(10) Permit documents showing use of baghouses to control kiln emissions at Mountain Cement competitor plants, including Cemex cement plant in

Lyons, Colorado, and GCC Dacotah cement plant in Rapid City, South Dakota.

(11) November 18, 2002 Mountain Cement Capital Expenditures Request CER #03-504.

(12) December 18, 2002 Mountain Cement letter to DEQ showing annual operation and maintenance cost for Kiln #2 ESP.

(13) EPA's Pollution Control Cost Manual for baghouses, excerpts.

(14) Resume of Bill Wilson, P.E.

Exhibit 15: June 12, 2005 Expert Report of Jonathan Shefftz and resume attached thereto.

Exhibit 16: July 29, 2005 Supplemental Expert Report of Bill Wilson and the following attachments:

(1) Wilson calculations based on EPA's Control Cost Manual.

(2) Procedaire Industries baghouse cost estimate, August 29, 2000.

Exhibit 17: September 13, 2005 Expert Rebuttal Report of Jonathan Shefftz.

Exhibit 18: September 17, 2005 Expert Rebuttal Report of Bill Wilson.

Exhibit 19: Supplemental Affidavit of Dan Olson, August 15, 2005, and the following attachment:

(1) April 7, 1999 DEQ Memorandum regarding "Section 19 Notification and Reporting Requirements."

Exhibit 20: EPA's HPV Policy and Workbook.

Exhibit 21: December 17, 2004 Wyoming v. Mountain Cement complaint.

Exhibit 22: March 17, 2005 Wyoming v. Mountain Cement consent decree.

Exhibit 23: Topographic map of Laramie and surrounding area.

Any Exhibit sponsored by Mountain Cement, and any exhibit for rebuttal purposes.

## PLAINTIFFS' TRIAL WITNESSES

1. Lay Witnesses.

The following witnesses are prepared to testify regarding plaintiffs' standing in this action. The testimony of these witnesses is expected to follow the testimony they have provided in their declarations and depositions.

Connie Wilbert, 705 S. 22nd St., Laramie, WY 82070.

Ms. Wilbert will testify that she is a long-time Sierra Club member, and that clean and healthy air is an important objective of the Sierra Club. She will testify that she, her husband and their two children live in Laramie. She will testify about how the pollution from the cement plant injures her enjoyment of the area. She will testify that the pollution from the cement plant creates layers of ugly pollution in the sky above Laramie, and that pollution coming directly from the smoke stacks looks bad. She will testify that she has given up riding her bike in areas downwind from the cement plant because of the pollution from the plant, its bad smell, and concerns over her health. She will testify that the smell of pollution from the plant is distinctive and unpleasant, and that she knows it comes from the cement plant due to the direction of the wind. She will also testify that she has stopped shopping at a garden center near the cement plant when pollution from the plant was too unpleasant to bear. She will testify that when she is forced to drive through the plume of the cement plant she rolls up the windows in the car to limit her exposure to the pollution. She will testify that her enjoyment in walking, hiking, biking and otherwise traveling and recreating in the Laramie area is adversely affected by the pollution from the cement plant, and that she is forced to avoid these activities when pollution is blowing towards her from the cement plant. She will testify that if pollution levels from the cement plant were lowered the adverse effects that she experiences would be reduced.

Ms. Wilbert will testify that she is not able to attribute any medical problems to pollution from the plant, but that she is very concerned that pollution from the plant increases the risk of health problems to her and her family. She does not like being exposed to hazardous pollution from the plant, and is concerned that the risk to herself and her family from this pollution increases when emissions from the plant are greater than permitted.

Michele Barlow, 718 S. 5th St., Laramie, WY 82070.

Ms. Barlow will testify that she is a member of Sierra Club and Biodiversity Conservation Alliance. She will testify that she and her husband live in Laramie. She is distressed by the pollution she can see discharging from the cement plant. She is concerned about the risks to her health posed by Mountain Cement's discharge of hazardous pollutants. She does not like being forced to breathe the pollution emitted from the cement plant. She does not like the noxious pollution she sees coming from the stacks and which she says carries a distinctive and unpleasant smell. When the wind is blowing pollution from the cement plant she avoids those downwind areas to avoid the pollutant exposure. She avoids running, biking and other recreational activities where she would have to breathe the pollution from the plant. She knows the smell is coming from the cement plant because it correlates with the wind direction.

She is concerned that Mountain Cement's higher-than-permitted discharges of pollution pose an increased risk to her health. She understands that Mountain Cement discharges hazardous pollutants that are known to cause or may cause cancer, or other serious health effects.

She does not like seeing ugly plumes of pollution coming from the smoke stacks of the cement plant that mar the scenery and skies of the Laramie Valley. She believes the pollution is an affront to the beauty of the area.

Bob Strayer, 719 S. 22nd St., Laramie, WY 82070.

Mr. Strayer will testify that he is a board member of Biodiversity Conservation Alliance. He will testify that clean and healthy air is an objective of BCA. He will testify that he lives in Laramie and is an outdoorsman. He will testify that he frequently sees a visible plume of pollution coming from the cement plant, and experiences an unpleasant smell when forced to breathe the pollution in the plume.

He will say that the plumes of pollution from Mountain Cement darken the skies in the Laramie area and are depressing for him to see. The pollution from the cement plant inhibits his enjoyment of the outdoors. His enjoyment of viewing plants and wildlife is harmed due to the pollution from the cement plant, and he limits his viewing to avoid the pollution plume. He will testify that the pollution from the cement plant sometimes diminishes his view of the mountains and sky.

He will testify that he avoids hiking areas when the plume from the cement plant is traveling in that direction. He also avoids areas downwind from the cement plant because of the obnoxious smell and the concerns he has for his health. He is concerned that the pollution from the cement plant is a hazard to his health, and the health of the community.

Martha Martinez del Rio, 2430 Douglas Dr., Laramie, WY 82070.

Ms. Martinez del Rio is a Sierra Club member. She and her family live in Laramie.

Ms. Martinez del Rio's enjoyment of the Laramie area is diminished by the pollution from the cement plant. Ms. Martinez del Rio will testify that the pollution plume from the cement plant is an eyesore, and that is sometimes obscures her view of the mountains. Ms Martinez del Rio is very concerned about the adverse health effects associated with the pollutants discharged by Mountain Cement.

2. Legal Background Witness

Mr. Mark Squillace, Director of the Natural Resources Law Center and Professor of Law and Colorado University (formerly Professor of Law at University of Wyoming), Campus Box 401, Boulder, CO 303-492-1287.

Mr. Squillace will provide background testimony for the jury about the framework and purpose of the Clean Air Act, including state, federal and citizen enforcement, and Title V operating permits.

3. Expert Witnesses.

The following expert witnesses are prepared to testify on matters set forth in their expert reports, any supplemental reports, and any rebuttal reports.

Bill Wilson, P.E., 7247 Brennans Dr., Dallas, TX 75214.

Mr. Wilson will testify that the installation of a baghouse at Kiln #2 would have prevented opacity and particulate matter exceedances. He will testify regarding his reasons for that opinion, the costs of baghouse installation, and the nature of the electrostatic precipitator at Kiln #2. Mr. Wilson will also testify that opacity is related to particulate matter. He will testify that taking equipment in and out of service is not a startup or shutdown.

Jonathan S. Shefftz, Senior Associate, Industrial Economics, Incorporated
2067 Massachusetts Avenue, Cambridge MA 02140.

Mr. Shefftz will testify regarding his calculations of the economic benefit obtained by Mountain Cement by exceeding the opacity limit at Kiln #2. Mr. Shefftz will follow the testimony set forth in his expert and rebuttal reports.

4. Mountain Cement Witnesses

Plaintiffs may call one or more of the following witnesses from Mountain Cement regarding the identified issues and matters covered in their depositions:

William Sansing, Environmental Manager. To authenticate documents, describe pollution monitoring systems and reporting at Laramie Plant, explain DEQ enforcement actions, describe nature and type of Kiln and clinker emissions from Mountain Cement.

Mike Meysing, Plant Manager. To authenticate documents, describe potential measures to reduce opacity and particulate matter emissions.

5. DEQ Witnesses.

Plaintiffs may call one or more of the following witnesses from Wyoming DEQ regarding the identified issues:

Dan Olson. To authenticate documents, describe positions set forth in his two affidavits filed in this action, provide DEQ interpretation of permit terms, describe background of state's enforcement of environmental requirements at Mountain Cement's Laramie Plant. In particular, Mr. Olson will testify regarding whether DEQ's 5% case screening policy means that exceedances less than five percent in a quarter are not violations. Mr. Olson will also testify regarding whether the state interprets Mountain Cement's permit to require 24 hour notice of any malfunction if it is being claimed as a malfunction, and whether COMS are to be used to enforce the opacity limits in the permits. Mr. Olson may also provide testimony regarding operating permits, citizen enforcement of those permits, and the purposes of the Clean Air Act.

Glen Spangler or Bob Gill. To authenticate documents, describe positions set forth in Mr. Olson's two affidavits filed in this action, provide DEQ interpretation of permit terms, describe background of state's enforcement of environmental requirements at Mountain Cement's Laramie Plant.

6. Data Summaries Witness

Sharon Breitweiser. 810 Harney, Laramie, WY 82072. If necessary, Ms. Breitweiser will testify regarding the tabulation of Mountain Cement opacity data in the data summary exhibits. Ms. Breitweiser will explain how she took the numerical values in Mountain Cement's reports and tabulated them in summaries. She will also explain how the opacity to particulate matter Excel spreadsheet was designed.

7. Defendant's Witnesses and Rebuttal Witnesses.

Plaintiffs reserve the right to call any witness sponsored by Mountain Cement, and any witness for rebuttal purposes.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of October, 2005, I caused to be mailed to Mr. Nicholas and Mr. Harris a copy of Plaintiffs' Amended Trial Exhibit and Witness Lists to the following addresses:

Philip Nicholas
Anthony, Nicholas et al.
170 N. 5th Street
P.O. Box 0928
Laramie, WY 82073

Jim Harris
Thompson & Knight, LLP
1700 Pacific, Suite 3300
Dallas, TX 75201

Reed Zars