U.S. DISTRICT COURT
DISTRICT OF WYOMING
FILED

JUN - 9 2006

Stephan Harris, Clerk
Cheyenne

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

BIODIVERSITY CONSERVATION )
ALLIANCE and SIERRA CLUB, )
)
Plaintiffs, )
)
v. ) Case No. 04CV 361-B
)
MOUNTAIN CEMENT COMPANY, )
)
Defendant. )

## NOTICE OF SIGNED SETTLEMENT AGREEMENT

Plaintiffs hereby provide notice to the Court that they and defendant Mountain Cement

have signed, at long last, the attached settlement agreement in the above-captioned matter. The

parties and the Court agreed that the Court would retain jurisdiction over this matter during the

life of the settlement agreement as more specifically set forth in the October 26, 2005 transcript

of settlement proceedings (also attached hereto).

Dated: __6/9/06__

For Plaintiffs Sierra Club and Biodiversity
Conservation Alliance

REED ZARS

Reed Zars
Attorney at Law
910 Kearney St.
Laramie, WY 82070
307-745-7979

-1-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of June, 2006, I caused to be mailed to Mr. Nicholas and Mr. Harris, a copy of Notice of Filing of Settlement Agreement to the following addresses:

Philip Nicholas
Anthony, Nicholas et al.
170 N. 5th Street
P.O. Box 0928
Laramie, WY 82073

Jim Harris
Thompson & Knight, LLP
1700 Pacific, Suite 3300
Dallas, TX 75201

Reed Zars

Philip A. Nicholas
Jason M. Tangeman
Anthony, Nicholas, Tangeman & Yates, LLC
170 N. Fifth Street
P.O. Box 0928
Laramie, WY 82073
(307) 742-7140
(307) 742-7160 Fax

Reed Zars
Attorney at Law
910 Kearney Street
Laramie, WY 82070
(307) 745-7979
(307) 745-7999 Fax

Attorney for Plaintiffs Biodiversity
Conservation Alliance & Sierra Club

James B. Harris
Becky L. Jolin
Steven R. Baggett
Thompson & Knight, L.L.P
1700 Pacific, Suite 3300
Dallas, TX 75201
(214) 969-1102
(214)-880-3247 Fax

Mark Hughes
Attorney at Law
7150 Montview Boulevard
Denver, CO 80220
303-264-3002
Attorney for Sierra Club

Attorneys for Defendant Mountain Cement Company

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| Biodiversity Conservation Alliance and Sierra Club, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) Case No. 04CV 361-B |
| v. | ) |
| | ) |
| Mountain Cement Company, | ) |
| | ) |
| Defendant. | ) |

## SETTLEMENT AGREEMENT

### I.

### Parties

The parties to this Settlement Agreement are:

A.     Biodiversity Conservation Alliance ("BCA"), a Wyoming-based citizens

conservation group. BCA is a nonprofit corporation organized under the laws of

Wyoming.

- 1 -

B.     The Sierra Club, a national, citizens conservation group dedicated to protecting natural resources, including clean air and water.  Sierra Club is a nonprofit corporation organized under the laws of California.

C.     Mountain Cement Company, a Nevada corporation doing business in Wyoming.

## II.

### Definitions

A.     "Plaintiffs" are Biodiversity Conservation Alliance, a nonprofit corporation organized and existing under Wyoming law, the Sierra Club, a nonprofit corporation organized and existing under California law, and their respective officers, agents, successors and assigns.

B.     "Plaintiffs' Attorney" is Reed Zars, his agents, employees, successors and assigns.

C.     "Defendant" is Mountain Cement Company and its officers, agents, successors, assigns, and parent companies.

D.     "Litigation" means the Clean Air Act citizen suit styled *Biodiversity Conservation Alliance and Sierra Club v. Mountain Cement Company*, currently pending in the United States District Court for the District of Wyoming, assigned Case No. 04CV 361-B.

E.     "Permits" mean Operating Permit No. 30-098 and Operating Permit No. 31-098 issued to Defendant by the state of Wyoming governing emissions to the air from the Plant.

F.     "Plant" means Defendant's cement manufacturing plant located west of Highway 287, approximately 2 ½ miles south of Laramie, Albany County, Wyoming, with a street address of 5 Sand Creek Road.

G.     "Settlement Agreement" means this Settlement Agreement. The effective date of this Settlement Agreement is October 26, 2005.

## III.

### Statement of Facts

The parties stipulate and agree to the following:

A.     The Plaintiffs and Defendant are parties to the Litigation.

B.     Jury trial began on October 24, 2005, and the Plaintiffs and Defendants dictated a Settlement Agreement into the record on the third day of trial, October 26, 2005.

C.     This Settlement Agreement implements the agreement reached by Plaintiffs and Defendant and read into the record on October 26, 2005.

D.     The Defendant owns and operates the Plant.

E.     Plaintiffs alleged in the Litigation that within the applicable statute of limitations the Defendant was in violation of limits described in the Permits governing visible emissions from the Clinker Coolers and Kiln #2 at the Plant, and particulate matter from Kiln #2 at the Plant.

F.     Defendant denies that the Permits have been or are being violated and through this Settlement Agreement is not admitting that any violations have occurred or that any actions are necessary to achieve compliance with the Permits.

       In consideration of the agreements contained in this Settlement Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Plaintiffs and Defendant agree as follows:

## IV.

### Installation of Bag House

Subject to the force majeure provision found in section X of this Settlement Agreement, Mountain Cement Company shall replace the Kiln #2 electrostatic precipitator with a bag house and shall only operate Kiln #2 with Kiln # 2 emissions passing through such bag house no later than November 1, 2007.

## V.

### Reservation

Subject to the release below, Plaintiffs shall have the right to bring an action against Defendant for any violations, including any opacity or particulate matter violations, that may occur after the effective date of this Settlement Agreement, and this Settlement Agreement shall not be used to preclude such action in any way. Plaintiffs and Defendant reserve their legal positions on what constitutes a violation.

## VI.

### Release

A.     Subject to the reservation above, Plaintiffs fully and completely release, discharge, and acquit and covenant not to sue Defendant with respect to the claims or causes of action alleged in the Litigation up to the effective date of this Settlement Agreement, or known to the Plaintiffs regarding the Plant up to the effective date of this Settlement Agreement, except to enforce this Settlement Agreement as authorized in section IX.

- 4 -

B.      This release includes all claims or causes of action for injunctive relief, damages, penalties, expenses (including attorneys' fees and expert witness fees) and costs of any nature up to the effective date of this Settlement Agreement related to the claims asserted by Plaintiffs in the Litigation, or unasserted claims known to Plaintiffs prior to the effective date of this Settlement Agreement.

C.      This release may be pleaded as a full and complete defense to, and may be used as a basis for an injunction against any action, suit, or other proceeding that may now be pending or may be instituted or prosecuted by any of the Plaintiffs against the Defendant involving any claim or cause of action released, and not reserved, by this Settlement Agreement.

D.      Upon payment of the litigation costs set forth in Section VIII, Plaintiffs' Attorney agrees to fully and completely release, discharge and acquit and covenants not to sue Defendant for any claims for recovery of any attorneys' fees, costs, and/or expenses up to the effective date of this Settlement Agreement that are related to the Litigation that have been assigned by Plaintiffs to Plaintiffs' Attorney.  Plaintiffs' Attorney represents and covenants that this release covers all claims related to the Litigation up to the effective date of this Settlement Agreement that he owns by virtue of any assignment from Plaintiffs or otherwise.

E.      This Settlement Agreement shall not be used by Plaintiffs against Defendant in any judicial or administrative proceeding in which Defendant is participating, except in a proceeding to enforce this Settlement Agreement.

## VII.

### Monies for Paving and/or Landscaping

By June 15, 2006, Defendant shall provide to Plaintiffs a list of paving and landscaping projects, including their estimated costs, that Defendant believes will reduce the greatest amount of fugitive dust emissions from the Plant for the least cost. By June 30, 2006, Plaintiffs will select from Defendant's list of landscaping and/or paving projects for the Plant one or more projects estimated to cost $75,000.00. By July 10, 2006, Defendant will select from the list supplied by Plaintiffs all or part of the project or projects for which it receives bids equaling at least $75,000.00 to be installed by August 18, 2006. At the completion of the project or projects, Defendant will supply to Plaintiffs a written description of what work was done, including copies of invoices totaling at least $75,000.00 related to undertaking the project or projects. Defendant does not warrant or represent the degree, if any, to which any paving and/or landscaping activities conducted pursuant to this paragraph will reduce fugitive dust emissions from the Plant.

## VIII.

### Litigation Costs

Defendant agrees to pay to Plaintiffs the total sum of $105,000.00, representing attorneys' fees and costs of litigation. This payment is in consideration of the releases set forth in Section VI. The payment will be in the form of a check payable to Plaintiffs' Attorney. Upon payment of the total sum above, Plaintiffs and Plaintiffs' Attorney herein fully release, discharge and acquit Defendant from its obligation under this paragraph.

## IX.

### Continuing Jurisdiction

The Court shall retain jurisdiction of this matter for purposes of enforcing the Settlement Agreement. When Defendant has completed its obligations under this Settlement Agreement, it will lodge with the Court a proposed Final Judgment. If Plaintiffs have not objected to the proposed Final Judgment within thirty days of its service, the Court shall enter such Final Judgment. Otherwise, the Court shall resolve any disputes regarding Defendant's compliance with this Settlement Agreement.

## X.

### Force Majeure

For the purpose of this Settlement Agreement, "force majeure" is defined as any event arising from causes beyond the control of Defendant or any entity controlled by Defendant, or its agents, contractors, or employees, that delays, prevents, or can reasonably be anticipated to delay or prevent compliance with this Settlement Agreement and that could not be overcome with reasonable diligence.

In connection with the November 1, 2007 deadline for installation of the bag house, Defendant's unanticipated or increased costs or changed financial circumstances shall not constitute force majeure. The absence of any agency approval, if one is legally required before installing the bag house alone, shall not constitute force majeure, if it is due to the failure of Defendant to timely and reasonably provide material information as necessary and required to obtain such approval.

Defendant shall provide written notice to Plaintiffs within 15 business days of when it first knew or reasonably should have known that a force majeure event might

- 7 -

cause a delay, and shall provide its best estimate of the expected duration of the delay. If Plaintiffs agree that the delay has been or would be caused by force majeure, the parties may stipulate to an extension of the deadline for the length of time necessary to accommodate the force majeure. If Plaintiffs do not agree that the delay or anticipated delay has been or would be caused by force majeure, or do not agree on the duration of the delay, the dispute shall be submitted to the Court for resolution.

In any submission to the Court, Defendant shall have the burden of proving that any delay or anticipated delay has been or would be caused by force majeure, and of proving the duration of any delay.

## XI.

### Prior or Contemporaneous Representations, Promises or Agreements

No party to this Settlement Agreement will argue or assert that this Settlement Agreement should be modified in any way or set aside based on any alleged representations, promises, or agreements made by any other party that are not expressly set forth in writing in this Settlement Agreement.

## XII.

### Warranties and Representations

The following representations and warranties shall survive the execution of this Settlement Agreement and the completion of the settlement:

A.     Each party to this Settlement Agreement warrants and represents on behalf of itself and its members that it has the power and authority to enter into this Settlement Agreement and that this Settlement Agreement and all documents delivered pursuant to

this Settlement Agreement, to which it is a party, are valid, binding and enforceable upon it.

B.      This Settlement Agreement has been prepared by the joint efforts of the respective attorneys for each of the parties and it should be construed according to its fair meaning and not against one party or the other as its drafter.

C.      The reservation in section V and release in section VI shall continue perpetually and shall be binding upon the Plaintiffs and the Defendant.

D.      This Settlement Agreement represents the entire agreement of the parties and supersedes all prior written or oral agreements and all contemporaneous oral agreements, and the terms are contractual and not mere recitals.

E.      This Settlement Agreement may not be amended, altered, modified or changed in any way except in writing signed by all parties to this Settlement Agreement and approved by the Court.

F.      THE PARTIES EXPRESSLY WARRANT THAT THEY HAVE CAREFULLY READ THIS SETTLEMENT AGREEMENT AND ALL EXHIBITS ATTACHED TO THIS SETTLEMENT AGREEMENT, UNDERSTAND ITS CONTENTS, AND SIGN THIS SETTLEMENT AGREEMENT AS THEIR OWN FREE ACT.

G.      The Plaintiffs have not conveyed or contracted to convey to any third party any portion of any claim or cause of action released in this Settlement Agreement, except any claims for attorneys' fees, expenses and/or costs that have been assigned to Plaintiffs' Attorney and released by Plaintiffs' Attorney in this Settlement Agreement.

H.      The Plaintiffs and Defendant have executed this Settlement Agreement in multiple originals.

For Defendant Mountain Cement Company

By  Stuart Tomlinson                         Dated   May 31, 2006

ITS: President

For Plaintiff Biodiversity Conservation Alliance

Dated   5/30/06

BY ERIK MOLVAR, EXECUTIVE DIRECTOR.

For Plaintiff Sierra Club

Dated   5/31/06

For Plaintiffs' Attorney

REED ZARS                                     Dated   5/30/06

- 10 -

```
0001
 1              * * * CONFIDENTIAL PROCEEDINGS * * *
 2             IN THE UNITED STATES DISTRICT COURT
 3                 FOR THE DISTRICT OF WYOMING
 4      -----------------------------------------------
        BIODIVERSITY CONSERVATION ALLIANCE
 5      and SIERRA CLUB,
 6
                 Plaintiffs,
 7
 8          vs.                       Case No. 04-CV-361-B
 9                                     Cheyenne, Wyoming
        MOUNTAIN CEMENT COMPANY,       October 26, 2005
10                                     9:20 a.m
11          Defendant.
        -----------------------------------------------
12
13            TRANSCRIPT OF SETTLEMENT PROCEEDINGS
14        BEFORE THE HONORABLE CLARENCE A. BRIMMER
                 UNITED STATES DISTRICT JUDGE
15
16      APPEARANCES:
        For the Plaintiffs:      MR. REED ZARS
17                               Attorney at Law
                                 910 Kearney Street
18                               Laramie, Wyoming  82070
19
        For the Plaintiff        MR. MARK HUGHES
20      Sierra Club:             Attorney at Law
                                 7150 Montview Boulevard
21                               Denver, Colorado 80220
22
        For the Defendant:       MR. PHILIP NICHOLAS
23                               Attorney at Law
                                 ANTHONY, NICHOLAS,
24                               TANGEMAN & YATES
                                 170 North Fifth Street
25                               P.O. Box 928
                                 Laramie, Wyoming  82073
0002
 1              * * * CONFIDENTIAL PROCEEDINGS * * *
 2      APPEARANCES CONTINUED:
 3      For the Defendant:       MR. JAMES HARRIS
                                 Attorney at Law
 4                               THOMPSON & KNIGHT, LLP
                                 1700 Pacific Avenue
 5                               Suite 3300
                                 Dallas, Texas  75201
 6
 7
 8
 9
10
11
12
13
14
```

```
15
16
17
18
19
20
21
22
23
24
25
0003
 1              * * * CONFIDENTIAL PROCEEDINGS * * *
 2                    P R O C E E D I N G S
 3         (Trial proceedings reconvened
 4         9:20 a.m., October 26, 2005.)
 5
 6              *   *   *   *   *   *   *   *   *
 7
 8         (Trial proceedings reconvened
 9         1:35 p.m., October 26, 2005.)
10         (Following in chambers out
11         of the presence of the jury.)
12              THE COURT:  Gentlemen, I understand that
13    during the noon hour you have come to agreeable terms with
14    each other and that you need to now make it a matter of
15    record.
16              MR. HARRIS:  That's correct, Your Honor.
17              MR. HUGHES:  That's correct, Your Honor.
18              MR. HARRIS:  Your Honor, on behalf of
19    Mountain Cement, and without -- obviously this is a
20    condition of the settlement.  We're not, obviously,
21    admitting any liability in connection with this action or
22    that we have been out of compliance with the terms and
23    conditions of our permit, and that we are not taking these
24    actions to come into compliance.
25              But with that understanding on the part of
0004
 1              * * * CONFIDENTIAL PROCEEDINGS * * *
 2    Mountain Cement, the parties have reached an agreement
 3    that Mountain Cement agrees to install a baghouse to
 4    control kiln number 2 emissions no later than November 1,
 5    2005.
 6              Mountain Cement shall provide sufficient
 7    notification to DEQ of its plan to replace the kiln
 8    number 2 electrostatic precipitator with a baghouse and
 9    seek a permit waiver for the project subject to a
10    reasonable force majeure no later than 18 months after DEQ
11    sign-off of the baghouse replacement project.
12              Mountain Cement shall only operate kiln number 2
13    with kiln number 2 emissions passing through such
14    baghouse.  That's Item 1.
15              2, release of all claims related to all plant
16    violations alleged in the lawsuit or known to plaintiffs.
17              3, plaintiffs will have --
18              THE COURT:  Tell me what that means, that
19    the plaintiffs are releasing you from any claims?
```

```
20                    MR. HARRIS:  Yes.
21                    THE COURT:  What about any other private
22   party?
23                    MR. HARRIS:  No, the release here is the
24   claims that the plaintiffs have brought in this lawsuit or
25   that are known to the plaintiffs, as to Biodiversity and
0005
 1              * * * CONFIDENTIAL PROCEEDINGS * * *
 2   the Sierra Club.
 3                    THE COURT:  Is that correct?
 4                    MR. HUGHES:  That's correct, Your Honor.
 5                    MR. ZARS:  As an aside -- all right, I
 6   will stop.
 7                    THE COURT:  And of course that release
 8   does not affect the DEQ.
 9                    MR. HARRIS:  That's correct, Your Honor.
10   Yes, that's correct.
11              3, plaintiffs will have the right to sue for any
12   opacity or particulate matter violations after the date of
13   the settlement, both sides reserving their legal positions
14   on what is a violation.
15                    THE COURT:  Define date of settlement.
16                    MR. HUGHES:  Today.
17                    MR. HARRIS:  Today.
18                    MR. ZARS:  We will see you tomorrow.
19                    MR. HUGHES:  Reed, don't say anything.
20                    MR. HARRIS:  4, plaintiffs will be
21   provided $75,000 to be used as they designate, that is,
22   the plaintiffs designate, at the plant, Mountain Cement's
23   plant, for paving or landscaping.
24                    MR. NICHOLAS:  To clarify, Your Honor, we
25   will expend the $75,000 on paving or landscaping projects
0006
 1              * * * CONFIDENTIAL PROCEEDINGS * * *
 2   to be designated by them.  We won't actually give them the
 3   money.  They will tell us what to do.  We will give them
 4   the receipts for the $75,000 that we've expended.
 5                    THE COURT:  So that will improve the
 6   beauty of the place?
 7                    MR. NICHOLAS:  Yes.
 8                    MR. HUGHES:  And we also hope will be
 9   designed to help control the dust from the plant.
10                    THE COURT:  Help you compete with
11   Budweiser.
12                    MR. NICHOLAS:  Yes.
13                    MR. HARRIS:  5, attorneys' fees and expert
14   witness fees claim settled for $105,000.
15              6, agreement terminates with the exception of
16   the release --
17                    THE COURT:  Now, when is the $105,000 to
18   be paid?
19                    MR. NICHOLAS:  2010.
20                    MR. ZARS:  And by whom?
21                    MR. HUGHES:  Please, can we just do this
22   and not joke?  You may think this is funny, Phil.
23                    MR. HARRIS:  Great question, Your Honor.
24   It will be paid at the same time as the settlement
```

```
25  agreement is signed.  If for some reason we can't get a
0007
 1              * * * CONFIDENTIAL PROCEEDINGS * * *
 2  signed agreement, we would be back in to enforce this, and
 3  when the Court enforced it, we would pay it at that time.
 4              Is that fair enough?
 5              THE COURT:  Yes.
 6              MR. HUGHES:  Or you could agree to do it
 7  within 60 days or something like that.
 8              THE COURT:  And this payment is jointly to
 9  both plaintiffs?  They divide it?
10              MR. HARRIS:  Yes.
11              6, the agreement terminates with the exception
12  of the release when Mountain Cement is only operating kiln
13  number 2 with kiln number 2 emissions passing through such
14  baghouse.  We're going to have a private agreement between
15  the parties, Your Honor, that we will file with the court.
16              And there will be two conditions of that
17  agreement that are enforceable by the Court.  One is the
18  installation of the baghouse within 18 months; if they
19  feel that we haven't done that, they can come back to you
20  and point out where we haven't.
21              And secondly, if we don't give them the 75 to
22  use, they can come back and say, "Judge Brimmer, they
23  didn't give us the 75," or, "They gave us the 75 and we
24  told them to do X and they didn't."
25              MR. HUGHES:  And the attorneys' fees.
0008
 1              * * * CONFIDENTIAL PROCEEDINGS * * *
 2              MR. HARRIS:  Good point, Mark, attorney
 3  fees.  Other than that, you would be out of this case,
 4  Your Honor.
 5              THE COURT:  So I take it, though, that the
 6  court must retain jurisdiction of this case until 18
 7  months have passed?
 8              MR. HARRIS:  You know, I think our view
 9  was -- yes.
10              MR. HUGHES:  Until the last condition is
11  met.
12              MR. HARRIS:  Is met.
13              THE COURT:  I was afraid that's what you
14  were going to say.  That isn't going to help my docket
15  any, but I will go along with you.
16              MR. HUGHES:  Thank you, Judge.
17              MR. NICHOLAS:  If that's important to you,
18  is there another way to do it?
19              THE COURT:  No.
20              MR. HARRIS:  7, Your Honor, the parties
21  will agree on a press release or they shall make no
22  official public statement about the settlement.
23              MR. NICHOLAS:  One last item --
24              MR. HUGHES:  We're clear on this, just so
25  we don't have a future dispute, if the reporters call the
0009
 1              * * * CONFIDENTIAL PROCEEDINGS * * *
 2  members, they can express what they think about the case,
 3  and, similarly, if they call Phil, they can do that.
```

```
 4                    MR. HARRIS:  The point is that nobody
 5     would -- unless we agree, wouldn't say, "On behalf of
 6     Biodiversity or Sierra Club here's what we're saying";
 7     same thing on Mountain Cement's part.
 8                    MR. HUGHES:  That's correct.
 9                    MR. NICHOLAS:  And in addition, we may
10     have to make SEC filings, and if we do -- we're required
11     to make them by law, so this wouldn't prevent us from
12     making our required SEC filings to shareholders and
13     investors.
14                    MR. HUGHES:  That's our understanding.
15                    MR. ZARS:  On that point, though, the
16     members will be identified as being members of one or
17     another of the groups so --
18                    MR. HARRIS:  That's fine.
19                    MR. ZARS:  Am I getting worried?
20                    MR. HARRIS:  Yes.
21                    THE COURT:  And, of course, I judge that
22     the parties would agree that the present jury shall be
23     dismissed now with thanks for their fine services?
24                    MR. NICHOLAS:  Yes, sir.
25                    MR. HARRIS:  Yes, sir.
0010
 1              * * * CONFIDENTIAL PROCEEDINGS * * *
 2                    MR. HUGHES:  Yes, Judge.
 3                    THE COURT:  So we don't have to pursue
 4     this to a trial?
 5                    MR. ZARS:  To a conclusion of the trial.
 6                    THE COURT:  Well, that's what I was going
 7     to ask you by way of a little heart-to-heart talk today,
 8     how in the world were we going to get this thing done this
 9     week, and I couldn't see it.
10                    MR. HARRIS:  Your Honor, if I might just
11     ask one question.  I read -- on the terms of the
12     agreement, Mr. Hughes, on behalf of plaintiffs
13     Biodiversity and Sierra Club, do you agree that I've
14     correctly represented the agreement we've reached?
15                    MR. HUGHES:  On behalf of Sierra Club I
16     do.
17                    MR. HARRIS:  And, Mr. Zars, on behalf of
18     Biodiversity?
19                    MR. ZARS:  And Sierra Club, I represent
20     them both.
21                    MR. HARRIS:  And we are in agreement on
22     those terms?
23                    MR. ZARS:  Yes.
24                    THE COURT:  All right.
25              With that, then, we shall go down to the
0011
 1              * * * CONFIDENTIAL PROCEEDINGS * * *
 2     courtroom and release the jury with many thanks, and I
 3     guess maybe we'll dismiss them.  They've worked pretty
 4     hard.  They've gotten three days in.
 5                    MR. HUGHES:  Hasn't been easy.
 6              Thank you, Judge.
 7                    THE COURT:  Thank you, gentlemen.
 8          (Trial proceedings recessed
```

```
 9          1:35 p.m., October 26, 2005.)
10
11
12                  *   *   *   *   *   *   *   *   *   *   *
13
14          (Trial proceedings concluded
15          1:45 p.m., October 26, 2005.)
16
17
18
19
20
21
22
23
24
25
0012
 1              *  *  * CONFIDENTIAL PROCEEDINGS  *  *  *
 2                   C E R T I F I C A T E
 3
 4
 5              I, JANET DEW-HARRIS, Federal Official Court
 6      Reporter for the United States District Court for the
 7      District of Wyoming, a Registered Professional Reporter,
 8      and Federal Certified Realtime Reporter, do hereby certify
 9      that I reported by machine shorthand the foregoing
10      proceedings contained herein on the aforementioned subject
11      on the date herein set forth, and that the foregoing pages
12      constitute a full, true and correct transcript.
13
14              Dated this ___ day of _____, 200__.
15
16
17
18
19                      _____
20                           JANET DEW-HARRIS
                         Federal Official Court Reporter
21                       Registered Professional Reporter
                         Federal Certified Realtime Reporter
22
23
24
25
```